**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

LEE SIMMS,

       Petitioner,

v.                                   Case No. 3:16-cv-671-J-32JRK

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et. al.,

       Respondents.

_____

<u>ORDER</u>

**I.**  <u>**Status**</u>

Petitioner Lee Simms, an inmate of the Florida penal system, initiated this action by filing a pro se Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody. Doc. 1. Petitioner is proceeding on an Amended Petition. Doc. 17. He challenges a state court (Duval County, Florida) judgment of conviction for aggravated battery with a deadly weapon. He is currently serving a twenty-year term of incarceration as a Habitual Felony Offender. Respondents filed a Response[1] (Doc. 43; Resp.) and a Supplemental Response (Doc. 45; Supp. Resp.). Petitioner filed a Reply (Doc. 48) and a Supplemental Reply (Doc. 49). This case is ripe for review.

---

[1] Attached to the initial Response are several exhibits that Respondents cite in both their Response and Supplemental Response. <u>See</u> Docs. 43-1 through 43-4. The Court cites the exhibits as "Resp. Ex."

## II.    **Governing Legal Principals**

### A. Standard Under AEDPA

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), cert. denied, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. See Marshall v. Sec'y Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation,

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1), (2). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." Id. § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. [at 102] (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. See, e.g., Mitchell v. Esparza, 540 U.S. 12, 18 (2003); Lockyer, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); Williams v. Taylor, 529 U.S. 362, 410 (2000) ("[A]n unreasonable application of federal law is different from an incorrect application of federal law.").

Bishop v. Warden, GDCP, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal citations modified).

## B. Exhaustion and Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. <u>See</u> 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. <u>Castille v. Peoples</u>, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999); <u>see also</u> <u>Pope v. Rich</u>, 358 F.3d 852, 854 (11th Cir. 2004) (noting "that <u>Boerckel</u> applies to the state collateral review process as well as the direct appeal process.").

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the ""opportunity to pass upon and correct" alleged violations of its prisoners' federal rights." <u>Duncan v. Henry</u>, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. <u>Duncan</u>, <u>supra</u>, at 365-366, 115 S. Ct. 887; <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

<u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. <u>See</u>, <u>e.g.</u>, <u>Coleman</u>,[2] <u>supra</u>, at 747–748, 111 S. Ct. 2546; <u>Sykes</u>,[3] <u>supra</u>, at 84–85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. <u>See</u>, <u>e.g.</u>, <u>Walker v. Martin</u>, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); <u>Beard v. Kindler</u>, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. <u>See</u> <u>Coleman</u>, 501 U.S., at 750, 111 S. Ct. 2546.

<u>Martinez v. Ryan</u>, 566 U.S. 1, 9-10 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can

---

[2] <u>Coleman v. Thompson</u>, 501 U.S. 722 (1991).

[3] <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977).

show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. <u>Ward v. Hall</u>, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause and prejudice,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." <u>McCoy v. Newsome</u>, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting <u>Carrier</u>, 477 U.S. at 488, 106 S. Ct. 2639).[4] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." <u>Id.</u> at 1261 (quoting <u>Carrier</u>, 477 U.S. at 494, 106 S. Ct. 2639).

<u>Wright v. Hopper</u>, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." <u>Carrier</u>, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001).

---

4 <u>Murray v. Carrier</u>, 477 U.S. 478 (1986).

<u>Ward</u>, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." <u>Calderon v. Thompson</u>, 523 U.S. 538, 559 (1998) (quoting <u>Schlup</u>, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. <u>Schlup</u>, 513 U.S. at 324.

### C. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003), and <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)). To establish ineffective assistance, a person must show that: (1) counsel's performance was outside the wide range of reasonable, professional assistance; and (2) counsel's deficient performance prejudiced the challenger in that there is a reasonable probability that the outcome of the proceeding would have been different absent counsel's deficient performance. <u>Strickland</u>, 466 U.S. at 687.

Notably, there is no "iron-clad rule requiring a court to tackle one prong of the <u>Strickland</u> test before the other." <u>Ward v. Hall</u>, 592 F.3d 1144, 1163 (11th Cir. 2010). Since both prongs of the two-part <u>Strickland</u> test must be satisfied to show a Sixth

Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 697.

"The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, 562 U.S. at 105. As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010). "Reviewing courts apply a 'strong presumption' that counsel's representation was 'within the wide range of reasonable professional assistance.'" Daniel v. Comm'r, Ala. Dep't of Corr., 822 F.3d 1248, 1262 (11th Cir. 2016) (quoting Strickland, 466 U.S. at 689). "When this presumption is combined with § 2254(d), the result is double deference to the state court ruling on counsel's performance." Id. (citing Richter, 562 U.S. at 105); see also Evans v. Sec'y, Dep't of Corr., 703 F.3d 1316, 1333-35 (11th Cir. 2013) (en banc) (Jordan, J., concurring); Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004).

III.  **Analysis**

*Ground One*

Petitioner alleges that trial counsel was ineffective for failing to move for a mistrial when the state failed to call the victim Michael Smith (a.k.a. Shorty Cool) as a witness at trial in violation of his Sixth Amendment right to confrontation. Doc. 17 at 5. Petitioner further alleges that because the evidence was insufficient, the state amended the Information to omit the use of a deadly weapon element; however, trial counsel failed to inform Petitioner or the jury about the amendment.

In ground one of his motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, Petitioner raised his claim regarding the state's failure to call the victim as a witness. Resp. Ex. H at 34. The trial court denied the allegation as follows:

> Defendant's sixth sub-claim alleges his counsel was ineffective for failing to file a motion for mistrial on the grounds that he was denied the right to confront his accuser because the State failed to call the victim at trial. Here again, Defendant's claim is without merit. An attorney is not ineffective for failing to raise a non-meritorious issue. Lugo [v. State, 2 So. 3d 1, 21 (Fla. 2008)]; Parker [v. State, 611 So. 2d 1224, 1227 (Fla. 1993)]. The Confrontation Clause prevents admission of testimonial evidence by a witness who does not appear at trial in order to preserve a defendant's right to cross-examine, or confront, the witness against him. Davis v. Washington, 547 U.S. 813, 813 (2006). The State did not attempt to admit any testimonial evidence from the alleged victim. Therefore, no violation of the Confrontation Clause occurred. Rather, the State used available witnesses to present testimonial evidence of the crime for which Defendant was convicted. Defendant was provided the opportunity to cross-examine these witnesses. Because Defendant's underlying ground for the motion is without merit, counsel cannot be deemed to be ineffective

for failing to file the motion. Accordingly, Defendant fails to show counsel's performance was deficient. Furthermore, Defendant's sixth sub-claim has already been addressed by the Court. On August 5, 2013, the Court held a hearing to discuss Defendant's request to remove counsel from representation. (Ex. D.) During discussions with the trial judge, Defendant specifically indicated the lack of victim testimony as one reason for counsel's removal. (Ex. D at 4.) The Court acknowledged this complaint, along with others, and denied Defendant's request, finding that counsel's performance was not deficient. (Ex. D at 7.) Therefore, Defendant's sixth sub-claim is also barred by the principle of collateral estoppel discussed <u>supra</u>. Defendant's sixth sub-claim for relief is denied.

Resp. Ex. H at 51-52. The First District Court of Appeal per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. I.

To the extent that the First DCA affirmed the trial court's denial on the merits,[5] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

---

[5] In looking through the appellate court's affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." <u>Wilson</u>, 138 S. Ct. at 1194.

Nevertheless, even assuming the state court's adjudication is not entitled to deference, this claim is without merit. At trial, Stephanie Canty[6] testified that Petitioner is her ex-boyfriend. Resp. Ex. C at 180. According to Stephanie, on November 1, 2012, Petitioner showed up outside of her home, uninvited, and demanded to speak with her. Id. at 183. Stephanie told Petitioner to leave and when he refused, the victim, who is Stephanie's cousin, approached Petitioner and told him to leave. Id. at 184. Petitioner then "swung" at the victim as the victim tried to grab Petitioner's hand. Id. According to Stephanie, Petitioner then "picked up something and started stabbing [the victim]." Id. at 184-85. Stephanie explained that she did not actually see the knife, but she noticed that while they were fighting, the victim started staggering and bleeding right before she saw Petitioner put an object in his pocket and walk away. Id. at 186. Stephanie stated that the victim's back had "flesh hanging out, and it was all red and swelling and bleeding." Id.

Stephanie's daughter, Andrea Canty, was also at the home the night Petitioner stabbed the victim. Id. at 162-65. According to Andrea, the victim went outside to talk to Petitioner as Petitioner was screaming for Stephanie to come outside. Id. at 165. Petitioner got upset because he thought the victim was Stephanie's boyfriend and began swinging at the victim. Id. The victim did not swing at Petitioner, but instead attempted to grab or "bear hug" Petitioner to keep him from swinging. Id. Andrea explained that she never saw the victim pull out a gun, knife, or yell at or threaten

---

[6] Stephanie Canty and her daughter, Andrea Canty, testified at trial. Resp. Ex. C. For ease of reference, the Court refers to these witnesses by their first name.

Petitioner. Id. Petitioner then began stabbing the victim in the back. Id. at 166. According to Andrea, she never saw Petitioner's knife, but she saw Petitioner making stabbing motions while saying "I'll kill you." Id. Andrea then saw two stab wounds in the victim's back. Id. Petitioner walked away and the victim followed him into the street and picked up a bottle. Id. at 168. The victim attempted the throw the bottle, but the pain from his stab wounds prevented him. Id. Andrea called 911 and the 911 recording was played for the jury. Id. at 173-76.

Officer Michael Blanton testified that he came into contact with Petitioner because he matched the description of the assailant in a pending arrest warrant. Id. at 200. Upon arresting Petitioner, Blanton administered Petitioner his rights to which Petitioner stated he understood. Id. at 202. When Blanton began reading a narrative of the arrest warrant, Petitioner interrupted by saying "no, no, no, that's not how it happened." Id. at 203. Instead, Petitioner told Blanton "that's not the type of man I am, I'm not going to stab somebody in the back . . . . I was attempting to stab him in the chest and he ducked . . . ." Id. at 204. Petitioner admitted to Blanton that he stabbed the victim with a knife and that he threw the knife somewhere after the incident. Id.

After Blanton's testimony, the state recalled Stephanie. Id. at 209. Stephanie testified that two weeks before the incident Petitioner was beaten up at her home. Id. However, she explained that the victim was not the individual who previously beat up Petitioner. Id. Following Stephanie's testimony, the state rested its case. It did not call the victim as a witness.

Petitioner testified at trial that he went to Stephanie's house because he was in love with her. Id. at 221. He stated that Stephanie told him to leave, so he began walking away; however, the victim came running outside and demanded that Petitioner come back. Id. at 222. According to Petitioner, the victim had attacked him on a prior occasion, so he was scared that he would be attacked again and told the victim to please stop. Id. at 225. He testified that the victim continued to run towards him and attempted to grab Petitioner's legs and wrestle, so Petitioner "hit him like two times in the back, two times in the back." Id. at 226. Petitioner stated that the victim had his hands in his pockets, which made Petitioner believe that he had a weapon. Id. However, Petitioner admitted that the victim never pulled out a weapon. Id. At the close of the evidence, the trial court instructed the jury on justifiable use of deadly force. Id. at 336. Nevertheless, the jury found Petitioner guilty of aggravated battery with a deadly weapon.

Following trial, Petitioner filed a pro se motion to discharge or replace trial counsel in which he claimed that trial counsel's failure to call the victim as a witness at trial violated his confrontation rights. Resp. Ex. A at 56-58. The trial court conducted a hearing on the motion where it heard argument from Petitioner and trial counsel. Id. at 92-95. Petitioner argued that trial counsel was ineffective for allowing the state to "take [him] to trial without a victim," he acted in self-defense, and that the victim lied about his name. Id. at 95. Trial counsel then explained, "I'm not going to support the State's case, but I think that they were able to prove it without the

victim unfortunately. I don't want to argue why I think the State was able to prove it." Id. at 96. The trial court denied the motion for substitution of counsel. Id. at 96-98.

At Petitioner's sentencing hearing, Petitioner again told the trial court that he did not want counsel to represent him because counsel lied to him about the victim appearing in court, and that the state introduced a false 911 tape. Id. at 108-110. The trial judge then recalled that on the day of trial, the victim interrupted the trial court's morning docket and was being very disruptive. Id. at 111-13. The prosecutor then added that he spoke with the victim the morning of trial and determined that the victim was inebriated and "under no condition to take the witness stand when he arrived. [The prosecutor] believe[d] he was drunk or [on] some kind of drug. [The prosecutor] sent him home to sleep it off, with the intention of bringing him back." Id. at 113. However, upon further reflection, the prosecutor decided to go forward without the victim "because [the Petitioner] did confess with two different witnesses seeing him commit the act." Id. Satisfied with the trial court and the prosecutor's representation of why the victim was not called as a witness, Petitioner agreed to go forward with trial counsel representing him at the sentencing hearing. Id. at 114.

Considering this record evidence, trial counsel's decision to not to seek a mistrial because the victim was never called as a witness at trial was strategic, and any such motion would have been meritless. Further, absent the victim's testimony, the state presented ample evidence supporting the jury's conviction for aggravated battery with a deadly weapon.

To the extent Petitioner claims trial counsel should have moved for a mistrial when the state amended the original Information, the amended Information merely omitted the language "to wit: knife." Resp. Ex. A at 11, 31. The amended Information still contained the language that Petitioner actually and intentionally touched or struck the victim and used a deadly weapon during such battery. Id. at 31. Thus, any objection would have been meritless. As such, Ground One is due to be denied.

***Ground Two***

Petitioner asserts that trial counsel was ineffective for failing to object when state witness Stephanie Canty drew an exaggerated picture of the victim's alleged stab wounds during her trial testimony. Doc. 17 at 9. According to Petitioner, absent Canty's drawing, the state did not present any other evidence regarding the nature of the victim's injuries.

Petitioner raised this claim in his amended Rule 3.850 motion. Resp. Ex. H at 35-36. The trial court denied the claim, finding in relevant part:

> In his second ground, Defendant contends counsel was ineffective for failing to object to evidence. Specifically, Defendant argues that it was prejudicial to allow a State witness to draw a picture during her testimony that purportedly depicted her recollection of the wounds she observed on the victim at the time of the crime. Assuming, <u>arguendo</u>, that counsel's objection would have been successful, Defendant still fails to show how improper admission of these drawings satisfies the prejudice prong of <u>Strickland</u>. Here again, Defendant's own testimony defeats his claim in Ground 2. At trial, Defendant testified that he stabbed the victim twice. (Ex. F at 238-40, 245-46.) Additional witness testimony also indicates the victim was transported, via ambulance, to the hospital for treatment of these wounds. (Ex. F at 176, 191.) Even without the drawings in evidence, there remains competent, substantial

> evidence to support the jury's verdict. The drawings themselves were merely used by the State to illustrate oral testimony of the witness describing wounds she observed on the victim. (Ex. F at 187-89.) Accordingly, Defendant has failed "to show that there is a reasonable probability the proceeding would have been different" had the drawings been suppressed. <u>Strickland</u>, 466 U.S. at 694. Defendant's claim for relief in Ground 2 is denied.

Resp. Ex. H at 52-53. The First DCA per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. I.

To the extent that the First DCA affirmed the trial court's denial on the merits,[7] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. Stephanie witnessed the incident and saw the victim's stab wounds immediately after the stabbing. During Stephanie's testimony, the prosecutor asked Stephanie to draw a diagram showing the shape of the victim's injuries. Resp. Ex. C at 188. Stephanie complied and drew the injuries, confirming that her diagram was a fair and accurate representation of where the stab wounds were on the victim. <u>Id.</u> at 189. The diagram of the injuries was admitted into evidence as state's exhibit 2. <u>Id.</u> However, even if this drawing had not been entered into evidence or produced at trial, the Court finds there was sufficient evidence supporting the jury's guilty verdict. <u>See</u> Ground One <u>supra</u>.

Therefore, upon thorough review of the record and the applicable law, the Court concludes that the state court's finding that Petitioner failed to demonstrate a

_____

[7] In looking through the appellate court's affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." <u>Wilson</u>, 138 S. Ct. at 1194.

reasonable probability that the omission of Stephanie's drawing would have resulted in a different outcome is neither contrary to nor an unreasonable application of <u>Strickland</u>. Further, it is not based on an unreasonable determination of the facts in light of the evidence presented to the state court proceeding. <u>See</u> 28 U.S.C. § 2254(d). Applying AEDPA deference, Ground Two is due to be denied.

### *Ground Three*

Petitioner alleges that trial counsel was ineffective for failing to request a special verdict form containing a specific finding of whether the knife used during the offense constituted a "deadly weapon." Doc. 17 at 10. Petitioner admits that he used a knife, but argues that the knife was only a "pocketknife," which is excluded from the definition of a "deadly weapon." Resp. Ex. H at 37.

Petitioner raised this claim in ground three of his amended Rule 3.850 motion. Resp. Ex. H at 37-39. The trial court denied the claim as follows:

> Defendant contends that counsel was ineffective for failing to request a special verdict form requiring the jury to make a special finding that the knife used was a deadly weapon.[FN2] However, according to section 784.05(1)(a)2, Florida Statutes (2012), use of a deadly weapon is an element of the offense of Aggravated Battery. Based on a review of the record, the jury was clearly instructed as to the State's burden of proof regarding that element. (Ex. F at 335, 344-45.) When competent, substantial evidence exists to support a jury's finding, it is not reasonable to suspect, "a jury would violate its oath, disregard the law, and ignore the trial court's instructions." <u>Sanders v. State</u>, 946 So. 2d 953, 959-60 (Fla. 2006).
>
> Defendant's own testimony admits the item used to stab the victim was a knife. (Ex. F at 238-40, 245-46.) Furthermore, there is testimony by two witnesses that the victim was transported to a hospital via ambulance and

treated for wounds caused by Defendant. (Ex. F. at 176, 191.) Accordingly, there is competent, substantial evidence to support the jury's verdict. Additionally, the jury was properly instructed as to the elements of Aggravated Battery and the definition of deadly weapon. The jury was also given a choice between the offense of Aggravated Battery and the offense of Battery, with the key difference being the use of a deadly weapon. (Ex. A.) Therefore, it is reasonable to conclude the jury followed the instructions provided by the Court in finding the Defendant to be guilty of Aggravated Battery, including the required element that Defendant used a deadly weapon. Therefore, the record conclusively refutes Defendant's contention that counsel was ineffective for failing to request a special verdict form.

> FN2. Defendant argues that the knife he used is, by definition, not a deadly weapon. However, all of the statutes and cases that Defendant cites in support of this argument, are concerned with the mere possession of a knife. None of those cases or statutes are concerned with the employment of a knife or the resultant injuries. The instant case is clearly distinguishable. The paramount issue in the instant case is not concerned with mere possession, rather the paramount issue is the manner of use of the knife and the resultant injuries Defendant caused by his use of the knife on the victim. Defendant's reliance on his cited cases and statutes is misplaced and fails to support his underlying argument that the State should be required to separately prove the knife is a deadly weapon.

Resp. Ex. H at 53-54. The First DCA per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. I.

To the extent that the First DCA affirmed the trial court's denial on the merits,[8] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. The state charged Petitioner by Information with aggravated battery with a deadly weapon in violation of section 784.045(1)(a)2, Florida Statutes (2012). Resp. Ex. A at 31. Section 784.045(1)(a)2 provides that "[a] person commits an aggravated battery who, in committing battery . . . uses a deadly weapon." In Florida, a pocketknife used to injury another can qualify as a deadly weapon for purposes of aggravated battery. Martin v. State, 747 So. 2d 474, 474 (Fla. 5th DCA 1999). Here, the jury was instructed on the definition of aggravated battery including the deadly weapon element. Resp. Ex. A at 37. As such, after a review of the record and the applicable law, the Court concludes that the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Ground Three is due to be denied.

### *Ground Four*

Petitioner contends that trial counsel violated Apprendi v. New Jersey, 530 U.S. 466 (2000), when he failed to request that the jury make a special finding that the pocketknife constituted a deadly weapon. Doc. 17 at 12. According to Petitioner,

---

[8] In looking through the appellate court's affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

pursuant to <u>Apprendi</u>, the jury was required to make such a finding before the trial court could sentence Petitioner to an enhanced Habitual Felony Offender disposition.

Petitioner raised this claim as ground four of his amended Rule 3.850 motion. Resp. Ex. H at 40-43. The trial court denied the claim when addressing ground three and ground four of the motion as follows:

> Defendant further contends that his sentence could not be enhanced under section 775.084, Florida Statutes (2012),[9] without a special finding by the jury that the knife was a deadly weapon. However, Defendant misunderstands section 775.084 as it relates to his case. The fact triggering section 775.084 is not, as Defendant argues, whether a knife is a deadly weapon. The trigger subjecting Defendant to enhancements under section 775.084 is the fact that he has been convicted of multiple violent felonies within the statutory time period. § 775.084(1)(b), Fla. Stat. (2012). The jury made all necessary factual findings and determined that Defendant committed the offense of Aggravated Battery as charged in the information. (Ex. A.) Defendant's present conviction was his second violent felony within the statutory time period of 5 years. (Ex. B.) It is the fact that Defendant has been convicted of two violent felonies in five years, rather than the underlying determination of whether the knife is a deadly weapon, that subjects Defendant to sentence enhancements under section 775.084. § 775.084(l)(b) Fla. Stat. (2012). Accordingly, Defendant's first sub-claim under Ground 3 is denied.

> . . . .

> In his fourth ground, Defendant renews his contention from Ground 3 that counsel was ineffective for failing to request a special verdict. The Court again denies this claim for the same reasons stated above. [FN3]

> > FN3. The Court notes that Defendant, in renewing his contention from Ground 3,

---

[9] Section 775.084 is Florida's statute regarding violent career criminals, habitual felony offenders, and habitual violent felony offenders.

specifically relies on Apprendi v. New Jersey, 530 U.S. 466 (2000). As detailed in the Court's discussion of Defendant's Ground 3, the fact subjecting Defendant to enhanced incarceration is the fact of his prior felony conviction. Apprendi specifically ruled that the "fact of a prior conviction" is not required to be found by a jury, rather this specific fact is one that may be found solely by a judge at sentencing. Id. at 490. Accordingly, Defendant's reliance on Apprendi to support his contention is misplaced.

Resp. Ex. H at 54-56. The First DCA per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. I.

To the extent that the First DCA affirmed the trial court's denial on the merits,[10] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. Initially, it appears that the postconviction court confused Florida's Habitual Violent Felony Offender designation requirements with Petitioner's HFO designation.[11] Nonetheless, the trial court was correct that Petitioner's enhanced twenty-year sentence was based upon Petitioner's

---

[10] In looking through the appellate court's affirmance to the circuit court's "relevant rationale," the Court presumed that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

[11] To receive an HVFO designation, a defendant must have at least one previous conviction for a designated violent crime. See § 775.084(1)(b), Fla. Stat. To receive an HFO designation, a defendant must have at least two qualifying prior felony convictions. See § 775.084(1)(a), Fla. Stat. The postconviction court erroneously cited to the HVFO provision of the statute and only mentioned one of Petitioner's qualifying prior convictions. However, Petitioner's judgment and sentence clearly shows Petitioner was designated as and HFO, and a review of these sentencing transcript shows the trial court properly adjudicated Petitioner as an HFO. See Resp. Ex. A at 77, 123-26.

status as a recidivist felon. Resp. Ex. A at 170-73. <u>Apprendi</u> does not apply to increases in a sentence due to recidivism. <u>See Apprendi</u>, 530 U.S. at 488-90 (recognizing recidivism as a traditional basis for a sentencing court's increase in an offender's sentence); <u>see also Almendarez-Torres v. United States</u>, 523 U.S. 224 (1998) (holding that a defendant's prior conviction is merely a "sentencing factor" that does not have to be submitted to the jury and proved beyond a reasonable doubt).

As such, after a review of the record and the applicable law, the Court concludes that the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Ground Four is due to be denied.

### Ground Five

Though not a picture of clarity, Petitioner appears to allege that trial counsel was ineffective for failing to object to Officer Blanton's statement at trial because he did not respond to the 911 call on the day of the incident. Doc. 17-2. In the Petition, Petitioner alleges the following:

> Counsel is ineffective assistance of counsel in failing to object to Officer Blanton statement in trial (Supporting Fact) F.S, 837, 06, 775, 082-083 - False official statements. That Officer Blanton is not the officer that responded to the scene on the day it happened[,] so[] he actually pulled up the report on his computer. <u>See</u> police report and transcript on page 203-17-18-19, counsel ask Officer Blanton. and you were in property sto(illegible) card there when it happened. right? Officer said No. I was not <u>See</u> Transcript page 206 15-16-17-18 counsel knew the state have no victim to testify in trial. Andrea is not the one made the 911 call on 11-1-2012 <u>See</u> Transcript on page 108 her mom Stephanie made that

call 11-1-2012 night of the incident. Andrea is not the witness that were there that night See Transcript 4 page #71 in (illegible) of the incident. Andrea sister Autumn Miller (Stephanie[']s other Daughter) Page 96 False 911- (illegible) was the one that wrote the original statement. Officer Wong wrote in his report the night at the hospital the victim left the hospital without getting wounds treated. Because the victim had a[n] active warrants that[']s why the prosecutor hid the original police report that the repor[t]ing Officer Wong wrote on 11-1-2012 Officer 7894 MTW Wong. Submit one written statements on 11/3/2012 Receiving Officer: 753LAS Lisa Spencer. Where is officer Wong reports he wrote on 11-1-2012. Counsel's deficiencie[]s 5th, 6th , and 14th - amendment protections under the United States Constitution have been violated but for counsel's errors, the results of th[]e p[ro]ceeding would have been different

Doc. 17-2 at 2.

In an attempt to discern the allegations in the Petition, Respondents believe that Petitioner is claiming "that counsel was ineffective in failing to object to Officer Blanton's testimony regarding the original incident report authored by Officer Wong on the ground that it contained false statements from Andrea Canty." Supp. Resp. at 5. They argue that Petitioner failed to exhaust these claims and they are now procedurally defaulted. Id.  However, in his Supplemental Reply, Petitioner clarifies that he is challenging Officer Blanton's trial testimony on the basis that it was insufficient to support the state's theory that Petitioner stabbed the victim. See Doc. 49 at 5. He again claims that the victim did not testify at trial and trial counsel coerced him into going to trial and testifying when trial counsel knew there was insufficient evidence to convict him. Id. at 5. Petitioner also appears to admit that this claim is unexhausted, stating "Ground Five . . . find letter to show why claim was previously unexhausted and cause for delay." Id.

It is unclear what "letter" Petitioner is referencing, and Petitioner does not set forth a convincing argument explaining cause for or prejudice from the procedural default of this claim. Further, he failed to allege that a "fundamental miscarriage of justice" will result if this claim is not addressed on the merits. Yet, even assuming this claim is properly exhausted, it is without merit because it is futile. Petitioner again attempts to challenge the sufficiency of the evidence against him, couching such challenge as a claim of ineffective assistance of counsel. However, Petitioner has failed to produce any evidence to overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." <u>Strickland</u>, 466 U.S. at 694. Contrary to Petitioner's assertion and as discussed in Ground Two above, there was ample evidence supporting Petitioner's conviction for aggravated battery with a deadly weapon.

To the extent petitioner claims that trial counsel coerced him into testifying, this claim is also without merit. Prior to testifying, the trial court conducted a colloquy with Petitioner regarding his decision to testify. Resp. Ex. C at 214-18. Petitioner advised the trial court that he considered the advantages and disadvantages of testifying and that it was his decision to testify. <u>Id.</u> Indeed, the state presented evidence that Petitioner, upon his arrest, confessed to stabbing the victim. <u>Id.</u> at 204 Petitioner's defense at trial was that he was justified in using deadly force. <u>Id.</u> at 219-52. If Petitioner wanted the jury to be instructed on self-defense, he needed to present evidence supporting the instruction and his testimony gave him that opportunity. Accordingly, Petitioner voluntarily and knowingly made the decision to testify, and

any advice trial counsel gave Petitioner that supported his decision to testify was reasonable. Ground Five is due to be denied.

### Ground Six

Petitioner argues that trial counsel was ineffective for waiving his right to speedy trial. Doc. 17-3 at 1. He claims that he was not afforded a trial within 175 days of his arrest, and that he did not authorize a continuance or waive his speedy trial rights. Thus, he argues that he should have been discharged pursuant to Florida Rule of Criminal Procedure 3.191.

Respondents claim that Petitioner failed to raise this claim of ineffective assistance of counsel in state court, and thus, it is unexhausted and procedurally defaulted. Supp. Resp. at 14-17. Petitioner appears to admit this claim is unexhausted and argues "Ground Six: offer affidavit as newly discovered evidence for actual innocence." Doc. 49 at 5. It is unclear what affidavit Petitioner is referring to and he does not offer any other argument to support this assertion.

A petitioner may obtain review of the merits of a procedurally barred claim to remedy a fundamental miscarriage of justice if he satisfies the actual innocence "gateway" established in Schlup, 513 U.S. at 298. "The 'Schlup gateway' is meant to prevent a constitutional error at trial from causing a 'miscarriage of justice' and 'the conviction of one who is actually innocent.'" Kuenzel v. Comm'r, Ala. Dep't of Corr., 690 F.3d 1311, 1314 (11th Cir. 2012) (per curiam) (quoting Schlup, 513 U.S. at 324); see Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (citations omitted) (recognizing that the fundamental miscarriage of justice exception is only available in

extraordinary cases upon a showing of "actual innocence" rather than mere "legal innocence"). "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324. Here, Petitioner's claim relates to a procedural issue rather than his factual innocence. As such, Petitioner has failed to show that a "fundamental miscarriage of justice" will occur if his claim is not analyzed on the merits. He has further failed to show cause for or prejudice from his procedural default.

Nevertheless, even if this claim were exhausted, it is meritless. Florida Rule of Criminal Procedure 3.191 governs a defendant's right to speedy trial in Florida. Pursuant to Rule 3.191(a), the state shall bring a defendant charged with a felony to trial within 175 days of his arrest. "This right is not self-executing and requires a defendant to take affirmative action to avail himself of the remedies provided under the statute." Dillard v. Sec'y Dep't of Corr., 440 F. App'x 817, 819 (11th Cir. 2011) (citing State v. Nelson, 26 So. 3d 570, 574 (Fla. 2010)).

Notably, "[under Florida law,] a waiver of speedy trial by counsel is binding on the defendant, 'even though done without consulting him and even against the client's

wishes.'" <u>Dillard</u>, 440 F. App'x at 820 (quoting <u>State v. Kruger</u>, 615 So. 2d 757, 759 (Fla. 4th DCA 1993)); <u>see also</u> <u>New York v. Hill</u>, 528 U.S. 110 (2000) (holding that defense counsel could waive defendant's right to be brought to trial within the 180-day period specified under the Interstate Agreement on Detainers, by agreeing to a trial date outside that period, even without the express consent of defendant). Moreover, "'[a] claim of ineffective assistance of counsel based on a failure to seek discharge because of a violation of the speedy trial rule is extremely tenuous where the State had available the recapture window of Rule 3.191(p)(3),' which was added in 1985 to give 'the system a chance to remedy a mistake.'" <u>Remak v. State</u>, 142 So. 3d 3, 6 (Fla. 2d DCA 2014) (quoting <u>Hammond v. State</u>, 34 So. 3d 58, 60 (Fla. 4th DCA 2010); <u>Florida Bar Re: Amend to Rules-Criminal Procedure</u>, 462 So. 2d 386 (Fla. 1984)).

The record reflects that Petitioner was arrested on November 23, 2012. Resp. Ex. A at 1. A review of the trial court's docket shows that Petitioner was arraigned on December 26, 2012, and jury selection was set to begin on March 18, 2013. <u>See</u> <u>State v. Simms</u>, 16-2012-CF-11400 (Fla. 4th Cir. Ct.). On March 18, 2013, within the 175-day speedy trial period, the trial court granted defense counsel's oral motion for continuance. <u>Id.</u> In a letter penned to the Florida Bar,[12] trial counsel explained that he and the state moved for a joint continuance after the witnesses failed to appear at their depositions. Doc. 17-2 at 5. When Petitioner filed a pro se notice of expiration of speedy trial on May 29, 2013, trial counsel did not adopt the motion. <u>Id.</u> After having

_____

[12] As an exhibit for Ground Five of the Petition, Petitioner attaches a letter trial counsel submitted to the Florida Bar in response to a complaint Petitioner submitted to the Florida Bar. Doc. 17-2 at 5-6.

multiple conversations with Petitioner about his speedy trial rights, trial counsel eventually filed a demand for speedy trial on June 25, 2013. Id. at 6. Pursuant to trial counsel's demand, jury selection commenced on July 8, 2013. Id.

Petitioner's claim that trial counsel waived his speedy trial rights over his objection fails because under Florida law, counsel had the right to waive speedy trial without consulting Petitioner and over Petitioner's objection. See Dillard, 440 F. App'x at 820. Moreover, Petitioner cannot demonstrate prejudice under Strickland because he does not provide any support for the conclusion that the state would not have been able to bring him to trial during the recapture period. See Remak, 142 So. 3d at 6. As such, his claim of prejudice is wholly speculative and insufficient to warrant federal habeas relief. See Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (recognizing that vague, conclusory, speculative, or unsupported claims cannot support an ineffective assistance of counsel claim). Ground Six is due to be denied.

### Ground Seven

Petitioner contends that trial counsel was ineffective for failing to raise the issue of Petitioner's competency to stand trial. Doc. 17-4 at 1. Respondents aver that this claim is unexhausted and procedurally defaulted. Supp. Resp. at 18-21. In his Reply, Petitioner merely states "Ground Seven: Petitioner was coerced, show how." Doc. 49 at 5.

Petitioner did not raise this claim of ineffective assistance of counsel in state court and he fails to argue cause for or prejudice from this procedural default. He further fails to show that a "fundamental miscarriage of justice" will result if this claim

is not addressed on the merits. Nevertheless, even if this claim was exhausted, it is without merit.

When evaluating claims involving counsel's failure to request a competency hearing, the Court finds the following explanation of Strickland's two-prong test instructive. See Thompson v. State, 88 So. 3d 312, 320 (Fla. 4th DCA 2012).

> To satisfy the deficiency prong based on counsel's handling of a competency issue, the postconviction movant must allege specific facts showing that a reasonably competent attorney would have questioned competence to proceed. The standard for competency to proceed is set out in Dusky v. United States, 362 U.S. 402, 80 S. Ct. 788 (1960), and codified in Florida Rule of Criminal Procedure 3.211. The question is "whether the defendant has sufficient present ability to consult with counsel with a reasonable degree of rational understanding and whether the defendant has a rational, as well as factual, understanding of the pending proceedings." Fla. R. Crim. P. 3.211(a)(1). Conclusory allegations of incompetency are not enough to warrant an evidentiary hearing. See Atwater v. State, 788 So. 2d 223, 229 (Fla. 2001). "[N]ot every manifestation of mental illness demonstrates incompetence to stand trial; rather the evidence must indicate a present inability to assist counsel or understand the charges." Card v. Singletary, 981 F.2d 481, 487-88 (11th Cir. 1992). "[N]either low intelligence, mental deficiency, nor bizarre, volatile, and irrational behavior can be equated with mental incompetence to stand trial." Medina [v. Singletary], 59 F.3d [1095], 1107 [(11th Cir. 1995)].

> The prejudice standard that applies to a typical claim of ineffective assistance of counsel, whether a reasonable probability exists that the outcome of the proceeding would differ, is ill-suited to a claim of alleged incompetency. The issue is not whether the outcome of the trial would have differed. Likewise, the Pate[13] presumption and standard are inapplicable. The issue is not whether, had counsel acted differently, the court would have been required to hold

---

[13] Pate v. Robinson, 383 U.S. 375 (1966).

a competency hearing under Rule 3.210. The focus of the prejudice inquiry is on actual prejudice, whether, because of counsel's deficient performance, the defendant's substantive due process right not to be tried while incompetent was violated. In order to establish prejudice in a properly raised ineffective assistance of counsel claim, the postconviction movant must, as with a substantive incompetency claim, set forth clear and convincing circumstances that create a real, substantial and legitimate doubt as to the movant's competency.

Thompson, 88 So. 3d at 319.

Here, Petitioner has not alleged specific facts showing that reasonable competent counsel would have questioned Petitioner's competency. There is nothing in the record that indicates Petitioner did not understand his criminal proceedings. Indeed, as trial counsel explained in his letter to the Florida Bar, Petitioner convinced trial counsel to file a demand for speedy trial after the witnesses, for the second time, failed to appear at their depositions. Doc. 17-2 at 5-6. Further, after conducting a through and intelligent colloquy with the trial court, Petitioner testified at trial that he committed the offense in self-defense. Resp. Ex. C at 214-52. His trial testimony was knowledgeable and thoughtful. Id.

After trial and prior to sentencing, Petitioner filed a pro se motion to replace or substitute counsel. Resp. Ex. A at 56. He also filed a pro se motion for new trial in which he alleged, among other things, that the trial court erred in failing to sua sponte schedule a competency hearing, appoint three experts to evaluate Petitioner's mental state at the time of the crime, and consider Petitioner's mental illness and psychotropic medication treatment. Resp. Ex. A at 60-61. At the sentencing hearing, trial counsel advised the trial court that he only adopted the pro se motion for new trial in part,

explaining "[t]he only thing that I think I would have had to say in short on a Motion for New Trial is that the Court erred in not granting the defendant's motion for judgment of acquittal after the State rested its case, again, after the defense rested it's case, and that the verdict is contrary to the law and to the evidence in the case." Resp. Ex. A at 118-19.

Trial counsel's decision to not adopt Petitioner's claim regarding the trial court's failure to conduct a competency hearing coupled with record evidence of Petitioner's proficiency at trial, exemplify that a reasonable attorney would not have questioned Petitioner's understanding of the criminal process. Petitioner's pro se motions and his communication with the trial court throughout his proceedings shows he fully understood the charges against him, but refused to admit culpability while experiencing frustration with his attorney's actions. See, e.g., Coleman v. Jones, No. 1:16-cv-00053-WTH-CAS, 2018 WL 1278759, at *2 (N.D. Fla. Mar. 12, 2018) (relying on petitioner's pro se motion to reduce sentence as evidence that petitioner was competent at time of plea). Petitioner understood the role of his defense attorney, the prosecutor, and the judge. While Petitioner may have disagreed with some of his attorney's decisions, Petitioner was able to communicate with his attorney and assist in the defense of his case. Thus, trial counsel was not ineffective for failing to request a competency hearing. Ground Seven is due to be denied.

Accordingly, it is

**ORDERED AND ADJUDGED:**

1.     Petitioner's Amended Petition (Doc. 17) is **DENIED** and this case is

**DISMISSED with prejudice**.

2.      Petitioner's Motion for Summary Judgment (Doc. 72) is **DENIED**.

3.      The **Clerk** shall enter judgment dismissing this case with prejudice, terminate any pending motions, and close the file.

4.      If Petitioner appeals this denial, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[14]

**DONE AND ORDERED** at Jacksonville, Florida, this 9th day of July, 2019.

TIMOTHY J. CORRIGAN
United States District Judge

Jax-7

C:     Lee Simms, #284095
       Bryan Jordan, Esq.

---

[14] The Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.